UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

**Agustina Bueno**

                **Plaintiff,**

   -against-

**MEL S. HARRIS AND ASSOCIATES, LLC**
**LR CREDIT 18, LLC**
**MEL S. HARRIS**
**TODD FABACHER**
**MICHAEL YOUNG**
**DAVID WALDMAN**
**SAMSERV, INC**
**HUSAM AL-ATRASH**
**WILLIAM MLOTOK**

                **Defendants.**

-----------------------------------------------------------------------X

Case No.: _____

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff brings this action for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, New York General Business Law § 349 *et seq.*, New York Judiciary Law § 487 *et seq.* and/or for conversion, and in support alleges as follows.

## SUMMARY OF CLAIMS

Defendants are a debt collection law firm, the principals and an employee of the firm (collectively MSH), a putative assignee creditor LR Credit 18, LLC ("LRC"), and a process serving company and an individual process server (collectively SAMSERV).

MSH, LRC, and SAMSERV engaged in a joint venture to obtain default judgments against over 100,000 consumers by, *inter alia*, systematically using false affidavits of service and false affidavit of merit. An application for final approval of a class action against these and related defendants for this systematic conduct. *Sykes v. Mel S. Harris, LLC*, et al, 1:09-cv-08486-DC (SDNY), *see* www.SykesClassAction.com.

1

Plaintiff Agustina Bueno is a Sykes class member who has opted-out of the class settlement. Ms. Bueno brings this individual action against MSH, LRC, and SAMSERV for procuring a default judgment against her in state court using a false affidavit of service and an affidavit of merit that falsely claimed personal knowledge of Ms. Bueno owing the putative debt. Furthermore, despite knowing that the default judgment against Ms. Bueno was obtained via "sewer service", and with a false affidavit of merit, MSH and LRC attempted to garnish Ms. Bueno's wages; and stated that they would voluntarily agree to vacate the judgment and discontinue the collections lawsuit unless Ms. Bueno released MSH and LRC from liability for their abusive debt collection practices.

### A.   JURISDICTION AND VENUE

1. The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 because this dispute involves predominant issues of federal law, the FDCPA . Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Queens County, New York.

### B.   PARTIES

3. Plaintiff Agustina Bueno is an individual currently residing in Queens County, New York.

4. Defendant MEL S. HARRIS AND ASSOCIATES, LLC ("MSH") is a limited liability

corporation organized under the laws of the State of New York, with its principal place of business at 5 Hanover Square, 8th Floor, New York, NY 10004. MSH is a debt collection law firm.

5. Defendant LR Credit 18, LLC ("LRC") is a limited liability corporation organized under the laws of the State of New York. LRC purchases putative consumer debts after they are in default from the putative original creditor and files lawsuits to collect on those debts. LRC is therefore a debt collector.

6. Defendant TODD FABACHER is an individual who robosigned thousands of affidavits of merit falsely claiming personal knowledge to key elements that allowed the entry of default judgments. Therefore Fabacher is a debt collector.

7. Defendant DAVID WALDMAN is an attorney, and was a member and partner at MSH. He regularly attempts to collect debts by signing thousands of debt collection complaints, and post-judgment executions. Waldman is a debt collector.

8. Defendant MEL S. HARRIS is an attorney who was the primary member and lead partner at MSH ever since the inception of the firm. He regularly attempts to collect debts by signing thousands of debt collection complaints and thousands of collection letters. Harris is a debt collector.

9. Defendant MICHAEL YOUNG has been the Executive Director at MSH since its inception in 2002. He regularly attempts to collect debts by managing the non-attorney collection operation at MSH. He makes the financial decisions at MSH, including bringing in, managing, and playing an integral role in decision making with debt buyer clients, including the LRC Entities. Mr. Young is therefore a debt collector.

10. Defendant SAMSERV, INC, a process serving agency, is a domestic business

corporation organized under the laws of the State of New York. SAMSERV regularly fails to serve summons and complaints and regularly executes false affidavits of service allowing the entry of default judgments. SAMSERV is therefore a debt collector.

11. Defendant HUSAMN AL-ATRASH ("Al-Atrash") is a process server, and worked for the process serving agency SAMSERV, during the period of putative service in the collection lawsuit against Ms. Bueno. On information and belief, Al-Atrash resides in the State of New York. Al-Atrash regularly fails to serve summons and complaints and regularly executes false affidavits of service allowing the entry of default judgments. Al-Atrash is therefore a debt collector.

12. Defendant William Mlotok is the owner of SAMSERV, INC. and is the chief executive officer, manager, and decision maker at SAMSERV, INC., and as such was central to the policy of having its process servers file false affidavits of service which allowed the entry of default judgments. Mlotok is therefore a debt collector.

### C. STATEMENT OF FACTS

13. Defendant LR Credit 18, LLC (hereinafter "LRC") is a debt collector that purchases charge off consumer debts for pennies on the dollar and files lawsuits to collect those alleged debts. LRC has filed thousands of collection lawsuits in New York.

14. There are currently twenty four LRC entities, numbered LR Credit #1-23 operating in New York State (plus an unnumbered LR Credit), according to the New York Secretary of State (the "LRC Entities").

15. The LRC Entities are wholly-owned subsidiaries of the same publically traded corporation, Leucadia National Corporation.

16. Each of the LRC Entities purchases putative consumer debts for pennies on the dollar, after they are charged off with the alleged original creditor.

17. On information and belief, the reason the LRC Entities create separate corporate debt collection vehicles is to create thinly capitalized corporations to protect their assets when they are sued for violating the FDCPA, and to minimize their exposure for the same.[1]

18. The LRC Entities exclusively used Mel S. Harris and Associates, LLC ("MSH") to collect the putative debts.

19. MSH is a debt collection law firm that files tens of thousands of collection suits in the names of debt buyers (such as the LRC Entities) or other putative creditors, in addition to sending out hundreds of thousands of collection letters and making hundreds of thousands of collection phone calls.

20. A large number of MSH collection lawsuits go out under the (putative) personal signature of attorney Mel S. Harris ("Harris").

21. On or about February 23, 2009, LR Credit 13, LLC ("LRC"), filed a collections lawsuit by and through MSH, against Ms. Bueno, titled *LR CREDIT 18, LLC v. Agustina Bueno,* Index No. 30133 QCV09 (Civil Court of the City of New York, County of Queens) (the "collections lawsuit"). *See Exhibit A.*

22. The collections lawsuit complaint was (allegedly) signed by Harris. *See Exhibit A.*

23. The collections lawsuit sought to collect a putative debt (the "debt" or "account") originally owed to "SEARS, allegedly flowing from a defaulted "Retail Charge Account Agreement", Num #5049941014828815. *See Exhibit A.*

24. Ms. Bueno has never had an account with "SEARS".

---

1 For example, statutory damages for FDCPA class actions are limited to the lesser of $500,000 or one percent of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B).

25. On or about April 16, 2009, LRC through MSH filed an affidavit of service in the collections lawsuit, alleging service on Ms. Bueno at the address 11630 Guy Brewer Blvd Apt 7F, Jamaica, NY, 11434 ("11630 Guy Brewer Blvd"). *See Exhibit B.*

26. Contrary to the affidavit of service, Ms. Bueno was never served with the lawsuit.

27. The process server was Husman Al-Atrash ("Al-Atrash"), DCA License No. 1279639, from the company SAMSERV, Inc ("SAMSERV"). The affidavit of service was notarized by William Mlotok ("Mlotok"). *See Exhibit B.*

28. On or about June 2, 2009, MSH filed an application for default in the collection lawsuit. The application was signed by a MSH attorney named Mel S. Harris. Mr. Harris affirmed under the penalty of perjury that Ms. Bueno had been properly served. The application sought entry of judgment for $ 3986.48 1. *See Exhibit C.*

29. MSH also filed an affidavit of merit, in support of LRC's application for default. *See Exhibit D.*

30. The affidavit was signed by Defendant Todd Fabacher ("Fabacher"), allegedly "an authorized and designated custodian of records for the plaintiff" (LRC), with "personal knowledge of, the facts and proceedings relating to this action". *Id.*

31. The affidavit was false. Fabacher had no "personal knowledge" of the underlying facts concerning the account, and was, in fact, primarily employed as an attorney by MSH.

32. Nevertheless, Fabacher swore (falsely) in his affidavit that he had personal knowledge that LRC was the assignee of a debt originally owed to "SEARS, flowing from a defaulted "Retail Charge Account Agreement". *Id.*

33. On or about June 15, 2009 MSH obtained a default judgment against Ms. Bueno on behalf of LRC (the "sewer service default judgment"). Judgment was entered against Ms. Bueno

6

in the amount of $3,995.80. *See Exhibit E.*

34. On November 30, 2009, a Marshal's Notice of Execution was issued against Ms. Bueno as a result of the default judgment: it referenced the amount due as $3,995.80. *See Exhibit F.*

35. The Defendants in the case at bar engaged in fraud to obtain the sewer service default judgment. Defendants have used the same pattern of fraud against over a hundred thousand other New York residents. The Second Circuit recently upheld certification in a class action alleging that the Defendants in the case at bar used false SAMSERV affidavits of service and false Fabacher affidavits of merit as part of a criminal conspiracy to fraudulently obtain debt judgments *en masse*:

> In this case, four plaintiffs allege that a debt-buying company [Leucadia[2]], a law firm [MSH], a process service company [SAMSERV], and others engaged in a scheme to fraudulently obtain default judgments against them and more than 100,000 other consumers in state court. Defendants allegedly acted in concert to defraud these consumers in violation of [the FDCPA, RICO, GBL 348, and Judiciary Law 487]. Plaintiffs… move for class certification.
>
> The motion is granted. The record before the Court establishes that defendants obtained tens of thousands of default judgments in consumer debt actions, based on thousands of affidavits attesting to the merits of the action that were generated *en masse* by sophisticated computer programs and signed by a law firm employee [Fabacher] who did not read the vast majority of them and claimed to, but apparently did not, have personal knowledge of the facts to which he was attesting. The record also shows that on hundreds of occasions the defendant process servers [including John Andino] purported to serve process at two or more locations at the same time. As discussed more fully below, defendants' unitary course of conduct purportedly to obtain default judgments in a fraudulent manner presents common questions of law and fact that can be resolved most efficiently on a class-wide basis.
>
> *Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 282-83 (S.D.N.Y. 2012) ("*Sykes II*") aff'd sub nom. *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70 (2d Cir. 2015) ("*Sykes III*")

36. Defendants Harris and Fabacher were among the MSH principals named personally in *Sykes* as part of the RICO criminal conspiracy.

---

2 Leucadia is the parent company of the LRC Entities.

37. Plaintiff Agustina Bueno is a *Sykes* class member who has opted-out of the class settlement. The *Sykes* class action law suit was filed on October 6, 2009, alleging the same facts of systemically false affidavits of merit and of service. *See Exhibit G*. Ms. Bueno learned of the default judgment against her in November of 2009. Therefore, claims that arise from the same allegations are tolled.

38. In the case at bar (as in *Sykes*), SAMSERV was the process serving company; Al-Atrash was the individual process server. *See Exhibit B* (affidavit of service).

39. In the *Sykes* case, plaintiffs' expert Nicholas Egleson executed a declaration on July 31, 2011, based on his analysis of Samserv's database of services for MSH between 2007-2011. *See Exhibit H* (the "magic process server" affirmation).[3] The *Sykes* District Court relied upon Egleson's declaration for the "findings of fact", supporting the claims of widespread sewer service for MSH by Samserv, including specifically by Andino:

> I make the following findings of fact based upon the depositions, declarations, and exhibits submitted by the parties in connection with this motion [for class certification]….
>
> Between January 2007 and January 2011, SAMSERV defendants performed service of process in 94,123 cases filed by Mel Harris in New York City Civil Court, 59,959 of which were filed on behalf of Leucadia defendants. (7/31/11 Egleson Decl. ¶¶ 2–4). Records maintained by defendants reveal hundreds of instances of the same process server executing service at two or more locations at the same time. (*Id.* ¶¶ 9–11, Ex. A). On 517 occasions, defendants Mosquera, Lamb, and Andino, alone, claimed to be have performed service in two or more places at the same time. (*Id.* ¶ 11, Ex. A). For example, Mosquera claimed to have performed service at four different locations at 1 p.m. on September 17, 2008. (*Id.* ¶ 10). Lamb claimed to have performed service at two different locations at 6:59 p.m. on November 28, 2007. (*Id.*). Andino claimed to have performed service at nine different locations at 4 p.m. on March 29, 2007. (Id.). There were also many other occasions where multiple services were purportedly made so close in time that it would have been impossible for the process server to travel from one location to the other as claimed. (*Id.* ¶¶ 13–23, Ex. B).

---

3 This is not a term used in the Egleson affirmation. However, given the findings in Egleson analysis, the term seems an accurate summary of the findings.

8

> These facts, together with the high number of default judgments obtained by defendants, provide substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service.
>
> *Sykes II* at 283, 284 (emphasis added).

40. The affirmation specifically found that "magician" Al-Atrash claimed to be serving process at two or more locations at the same time in nine instances. See Egelson Affirmation, p. 9.

41. In the case at bar, Al-Atrash stated (falsely) that he exercised due diligence to attempt service on Ms. Bueno at the address 11630 Guy Brewer Blvd, Apt 7F, Jamaica, NY 11434 on: "04/03/2009, 6:46am 04/04/2009 9:12pm, 04/06/20099:02 am and having verified the Residence with MS. JANE." *See Exhibit B*. These statements are false.

42. In the case at bar, Defendant Fabacher also executed a false affidavit of merit. *See Exhibit D*. Fabacher attested (falsely) that he had "personal knowledge" of the key facts necessary for the default judgment against Ms. Bueno. This included "personal knowledge" that LRC was the assignee of a debt (the "debt" or "account") originally owed to SEARS, flowing from a defaulted "Retail Charge Account Agreement". *Id.*

43. In fact, Fabacher had no knowledge of any of the facts for which he alleged personal knowledge—alleged facts that were necessary to obtain the default judgment. *See Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413, 420 (S.D.N.Y. 2010) ("*Sykes I*") ("Fabacher, signed the vast majority of the approximately 40,000 affidavits of merit they filed each year. Fabacher averred to having personal knowledge of the key facts establishing that the debt in each collection action was due and owing. Assuming 260 business days a year, Fabacher had to have personally (and purportedly knowledgeably) issued an average of twenty affidavits of merit per hour, i.e., one every three minutes, over a continuous eight-hour day."); *Sykes II* at 285 ("Hence,

9

Fabacher signs hundreds of affidavits a week, purportedly based on personal knowledge, purporting to certify that the action has merit, without actually having reviewed any credit agreements, promissory notes, or underlying documents, and, indeed, without even reading what he was signing.")

44. Al-Atrash's false affidavit of service (*Exh B*) and the Fabacher false affidavit of merit (*Exh D*) were two key documents allowing Defendants to obtain the sewer service default judgment against Ms. Bueno.

45. On June 2, 2009 Defendant Mel Harris ("Harris"), a partner at MSH, used the false affidavits of service and merit, to file an application for default judgment. *See Exhibit C*. In the application for default judgment, Harris falsely affirmed under penalty of perjury that service of the summons and complaint had been made. *Id.* Default judgment was rendered against Ms. Bueno for $3,995.80 on June 15, 2009. *See Exhibit E.*

46. On August 15, 2013, the process server in the case at bar, Husam Al-Atrash, was accused of failing to maintain the standards of integrity, honesty, and fair dealing required of licensees by the City of New York Department of Consumer Affairs. *See Exhibit I*. He was charged with violations of the Administrative Code of the City of New York and Process Servers Rules: after receiving notice of traverse hearings, he did not properly report them, or make attempts to learn the results of such hearings in accordance with procedures specified in 6 RCNY§ 2-236(c)(1). *Id*. Al-Atrash also failed to create logbook entries for numerous attempts and services. *Id*.

47. On February 3, 2014, Al-Atrash entered into a Consent Order with the Department to resolve the charges without a hearing – he was ordered to strictly and promptly comply with all laws and regulations, and to not serve process in New York City for unlicensed process serving agencies. He was also ordered to pay a fine of $1000 to settle all his previous violations. *See*

*Exhibit J*.

48. By June 29, 2015 MSH and Harris (a named defendant in Sykes), actually knew of the July 31, 2011 Egleson declaration (*Exh H*). As previously noted, the Egleson declaration was a key piece of evidence relied upon in the district court's findings of fact in support of its 2012 order granting class certification. *Sykes II* at 284.

49. As Defendants were involved in the fraudulent conduct that resulted in the sewer service default judgment, Defendants' attempt to execute against Ms. Bueno's personal property constituted an attempt at conversion at the outset.

50. Ms. Bueno did not know, nor did she have any reason to know, that a suit by LRC was filed against her, much less that a judgment was entered, until she received the Marshal's Notice of Execution, sometime in November of 2009.

51. MSH had ample notice that Al-Atrash was an unreliable process server. Most obviously, MSH and its principals knew there was a high likelihood that the Al-Atrash (SAMSERV) affidavit of service and Fabacher affidavit of merit were false—SAMSERV and MSH were all sued in a class action lawsuit alleging the same. MSH and its principals in the *Sykes* class action obviously knew of the information of massive sewer service.

52. MSH and LRC knew the judgment they were attempting to maintain was the result of fraud and were attempting to "dupe" Ms. Bueno into unknowingly relinquishing her rights. Indeed, it is the pattern and practice of MSH to attempt to slip in language releasing claims for its known abusive debt collection litigation conduct. *See Cameron v. LR Credit 22, LLC*, 998 F. Supp. 2d 293, 298 (S.D.N.Y. 2014) (MSH and LRC duped consumer into signing a stipulation of payment on a known time barred debt and included (and attempted to enforce) boilerplate language that sought to "waive" any rights the consumer for their FDCPA violations; waiver

11

language held not to release FDCPA claims, which were not known to the consumer).

53. Therefore it was unconscionable, as well as false, deceptive, and misleading for MSH and LRC to condition its stipulation to discontinue upon Ms. Bueno waiving and releasing MSH and LRC from any claims related to the collections lawsuit because the sewer service judgment should never have been entered in the first place, and Ms. Bueno should not have been asked to give up any of his rights as a condition of the sewer service default judgment's vacatur.

54. Ms. Bueno suffered damages as a result of Defendants' conduct: she endured significant emotional distress. Ms. Bueno is illiterate and ailing – a diabetic with difficulty getting around, who survives on SSI payments. After she received the Marshal's Execution Notice, Ms. Bueno became concerned she could be arrested or that her house and her belonging would be seized: She had a nightly, recurring dreams that people came to her home and started taking her belongings; as a result, she began to have difficulty sleeping, and had to start taking sleeping pills. She also lost a substantial amount of weight during this period, not eating because she was so nervous, and stopped communicating with family members. She lived alone, and unplugged her phone, because every time it range she would get scared.

55. Ms. Bueno never held an account with "SEARS" nor had she ever heard of (or from) any of the Defendants.

56. One or about September 30, 2015 MSH contended that they had "closed their doors," and allegedly closed their business.

57. However, in point of fact, MSH simply changed the name on the front door. While the principal attorneys to the firm "retired" in part due to the *Sykes* class action settlement, in fact Mr. Young and the in-house collection department of MSH, as well as the staff attorneys, simply "moved down the street" to operate under the name of an mass-filing debt collection law firm.

Stephen Einstein & Associates, P.C. In moving over the MSH collection operations, Mr. Young simply changed his title from Executive Director of MSH to Executive Director of Stephen Einstein & Associates, P.C. And tens of thousands of judgment accounts, including the account of Mr. Guzman, were transferred from MSH to Einstein.

### D. COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

58. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

59. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

60. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

13

61.     The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

62.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

63.     Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) because their principal purpose is the collection of debts and/or they regularly attempt to collect debts, directly or indirectly.

64.     LRC is a "debt collector" because it purchases charged off consumer accounts after they are in default with the putative original creditor and attempts to collect on them by sending thousands of collection letters and filing thousands of collections lawsuits.

65.     MSH is a law-firm in the business of collecting debts because it attempts to collect alleged debts owned by others by filing thousands of collections lawsuit, by sending out thousands of collection letters, and by making thousands of debt collection telephone calls.

66.     Harris is a "debt collector" because he attempts to collect alleged debts owned by others by (purporting to) sign thousands of collection lawsuits, thousands of debt collection pleadings, thousands post-judgment collection mechanisms (e.g. information subpoenas), and thousands of collection letters. Harris is the primary shareholder of MSH, and is the named partner.

67.     Waldman is a "debt collector" because he attempts to collect alleged debts owned by others by (purporting to) sign thousands of collection lawsuits, thousands of debt collection pleadings, and thousands post-judgment collection mechanisms (e.g. executions). Waldman is a shareholder of and partner in MSH.

68.     Fabacher is a "debt collector" because he attempts to collect, directly or indirectly,

alleged debts owned by others by signing hundreds of thousands of affidavits of merit that falsely allege personal knowledge as to the key facts that allow the fraudulent entry of default judgments against consumers, including Ms. Bueno.  Fabacher is also a debt collector because as the "director of information technology" for MSH, Fabacher collected debts directly and indirectly by creating the MSH system that directed debt collection practice for MSH, including how and when to file suit, issue executions, or issue collection letters.

69. Based in part on the findings of fact by the district court in the order certifying class certification in *Sykes*, based on deposition testimony, and on information and belief, Harris, Waldman, Fabacher, and Young were key actors in creating, implementing, and maintaining the common scheme against consumers such as Ms. Bueno by allowing false affidavits of service and false affidavits of merit to be used to systematically enter default judgments against consumers.  As succinctly stated by the district court:

> Plaintiffs do not merely allege that the Leucadia and Mel Harris defendants "lack physical evidence of the debt," but that they knowingly authorized defendant Fabacher to file false affidavits of merit—misleading both the Civil Court and consumer-defendants—to secure default judgments that enabled them to freeze bank accounts, threaten to garnish wages, or pressure individuals into settlements.

*Sykes I*, at 424

For these reasons and others, Harris, Waldman, Fabacher, and Young are jointly and severally liable for the liability of MSH as to Ms. Bueno.

70. Defendants materially violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e, and 1692f.  For the reasons stated in the Statement of Facts, Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or

15

implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

### E. COUNT # 2: NEW YORK GENERAL BUSINESS LAW SECTION 349 ET SEQ.

71. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

72. New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

73. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h).

74. As enumerated in the Statement of Facts above, Defendants violated N.Y. Gen. Bus. Law § 349 et seq. by using deceptive acts and practices in the conduct of their businesses, and their conduct has a broad impact on consumers at large.

75. Defendants committed the above described acts willfully and/or knowingly.

76. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

77. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive

relief, and to recover actual, treble and punitive damages, and costs and attorney's fees.

### F. COUNT # 3: NEW YORK JUDICIARY LAW § 487
(against attorney Defendants MSH, Harris, and Waldman)

78. New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

79. Defendants MSH, Harris, and Waldman (the "attorney Defendants") Defendants violated § 487 by, *inter alia*, using false affidavits of service and false affidavits of merit to obtain a default judgment against Ms. Bueno; and to use the fraudulently obtained judgment to execute on Ms. Bueno's wages, and to refuse to discontinue the collections lawsuit unless Ms. Bueno agreed to release all Defendants from their fraud. This conduct inflicted and continues to inflict damages on Ms. Bueno.

80. The violations of § 487 by Defendant inflicted damages, for the reasons and in the manner stated in the above Statement of Facts.

81. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487 by Defendant, and Plaintiff so seeks.

### G. JURY DEMAND.

82. Plaintiff demands a trial by jury.

### H. PRAYER

83. WHEREFORE, Plaintiff requests the following relief:

    a. A declaration that all Defendants have committed the violations of law alleged in this action;

    b. An order enjoining and directing all Defendants to cease violating G.B.L. § 349 *et seq.*;

  c. Statutory damages under 15 U.S.C. § 1692k and GBL 349;

  d. An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k and G.B.L. § 349;

  e. A judgment for actual, treble, statutory, punitive, and exemplary damages;

  f. Prejudgment and post judgment interest as allowed by law;

All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated: Brooklyn, New York
   August 24, 2016

           Respectfully submitted,

           /s/

           Ahmad Keshavarz
           The Law Office of Ahmad Keshavarz
           16 Court St., 26th Floor
           Brooklyn, NY 11241-1026
           Phone: (718) 522-7900
           Fax: (877) 496-7809
           Email: ahmad@NewYorkConsumerAttorney.com