# AHMAD KESHAVARZ
## *Attorney at Law*

---

16 COURT ST., 26TH FLOOR
BROOKLYN, NY 11241-1026

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

PHONE: (718) 522-7900
FAX: (877) 496-7809

February 14, 2017

VIA ECF
Hon. Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> **Re:** **Plaintiff's response to Defendants' proposed motion for partial judgment on the pleadings.**
> ***Bueno v. Mel S. Harris and Associates, LLC, et al.*, Case No. 1:16-cv-04737-WFK-VMS**

Dear Judge Scanlon:

The undersigned represents Plaintiff Agustina Bueno in this Fair Debt Collection Practices Act ("FDCPA") and General Business Law § 349 case. Plaintiff submits this letter in opposition to Defendants' Motion to Quash Plaintiff's subpoena to Emery Celli Brinkerhoff & Abady, LLP ("ECBA"). For the reasons detailed below, Defendants' motion should be denied.

## *BACKGROUND*

Defendants are a putative assignee creditor ("LRC") and a process serving company and individual process server (collectively "Samserv"). Defendants engaged in a joint venture to obtain default judgments in consumer collection cases in state court by systematically filing false affidavits of service and false affidavits of merit. *See Sykes v. Mel S. Harris, LLC,* et al., 1:09-cv-08486-DC (SDNY). Plaintiff Agustino Bueno is a *Sykes* class member who has opted-out of the class settlement. Ms. Bueno brings this individual action against Defendants for procuring a default judgment against her in state court using a false affidavit of service and an affidavit of merit that falsely claimed personal knowledge that Ms. Bueno owed the putative debt. Further, despite knowing that the default judgment against Ms. Bueno was obtained via "sewer service," Defendant made numerous attempts to execute on the judgment.

On or about January 13, 2017, Plaintiff served class counsel for the *Sykes* plaintiffs a subpoena (**Exhibit A**) requesting production of sealed documents from *Sykes* that Ms. Bueno needs to prosecute the case at bar. LRC moved to quash the subpoena on the grounds that it is overly burdensome and because it seeks information that is irrelevant and confidential pursuant to a protective order in *Sykes*. On February 7, 2017, the Samserv defendants filed a letter joining LRC in its application to quash the subpoena. Defendants contend that the subpoena improperly seeks discovery that was rejected by the Court in an out-of-district case captioned *Guzman v. Mel S. Harris and Associates LLC, et al.*, Case No. 1:16-cv-034999-GBD-RLE ("*Guzman*").

## *DISCUSSION*

1

In an ECF order from February 7, 2017, Your Honor expressed concern that the subpoena to ECBA requests discovery "as to which the herein Plaintiff's counsel has already unsuccessfully sought an unsealing order in a similar litigation entitled *Guzman* in the Southern District of New York . . ." However, the discovery requested in *Guzman* was far broader than the discovery sought via the subpoena. In *Guzman*, Plaintiff requested **all** the discovery and **all** of the pleadings in *Sykes*. *See* **Exhibit B** (Guzman discovery demands to Samserv). Judge Ellis rejected Plaintiff's request on the basis that the entire discovery and all the pleading in *Sykes* would include voluminous records, many of which would not be relevant to the claims and defenses in *Guzman*. Judge Ellis found that the burden on Samserv would likely outweigh the benefit of such voluminous discovery.

By contrast, Plaintiff's subpoena to ECBA was tailored to elicit only information that is directly relevant to Plaintiff's claims in this case.[1] As explained by ECBA in its February 14, 2017 letter to the Court, there ae only 34 documents responsive to Plaintiff's request. *See* **Exhibit C** (the February 14, 2017 letter from ECBA). These documents have already been collected and produced to LRC in electronic form by ECBA. ECBA's letter makes abundantly clear that the requested information is readily available to it and that any burden has already been incurred during *Sykes*.

Judge Ellis' decision in *Guzman* was based on the potential burden on Samserv. This consideration is inapplicable here because the subpoena was served on a third party. The burden of production will not be borne by Samserv or LRC. *See Malibu Media, LLC v. Doe*, No. 15-CV-3504(JFB)(SIL), 2016 WL 4444799, at *6 (E.D.N.Y. Aug. 23, 2016)("even where the defendant has alleged some personal privacy right or privilege to the documents sought . . . the defendant still lacks standing to oppose a third party subpoena on undue burden grounds.") The burden of complying with the subpoena falls on ECBA, not on Defendants, and ECBA is therefore the only entity that can challenge the subpoena on undue burden grounds.

In *Guzman* Samserv claimed that the record in *Sykes* "span at least five shelves, many of which are filled with CDs, DVDs, and other media." In its letter joining LRC's motion to quash the instant subpoena, Samserv states that this argument applies "with full force here as well." Yet, ECBA has represented to Plaintiff and to the Court that the information requested is available in electronic form and could be produced in mere minutes. **Exhibit B**.

LRC claims that, should ECBA respond to the subpoena, "LRC's counsel will need to review documents and prepare witnesses regarding the sweeping allegations and extensive discovery from *Sykes*." It is unclear why LRC would be forced to prepare witnesses regarding these documents if LRC's position is that the documents are not relevant. As the requested documents bear only upon Plaintiff's claims, Plaintiff submits that production of the deposition transcripts would in fact speed along this litigation by negating any need for Plaintiff to depose

---

[1] Defendant LRC apparently agrees that the filings in *Sykes* are relevant to this action because its Amended Answer "refers the Court to the full and complete record in the *Sykes* litigation" eight times, at paragraphs 34, 35, 36, 38, 42, 47, 53, and 76. DE 33. Notably, LRC replied in this manner to Plaintiff's allegation, at paragraph 42 of the Amended Complaint, that "Fabacher had no knowledge of any of the facts for which he alleged personal knowledge—alleged facts that were necessary to obtain the default judgment." DE 30.

witnesses about topics that have already been explored during the depositions in *Sykes*. Production of the transcripts would also minimize attorney's fees for all parties.[2]

Plaintiff needs the requested information in order to prove her claims in this case—not in order to re-litigate *Sykes*, as Defendants allege. LRC's FDCPA liability is based on the misconduct that Mel S. Harris ("MSH") committed on its behalf. *See Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 156 (S.D.N.Y. 2015)(debt buyer is liable for the misconduct of its debt collection attorney). Plaintiff's FDCPA claim against LRC is based on the allegation that Fabacher, an employee of MSH, robo-signed false affidavits of merit claiming personal knowledge of the facts necessary to allow the entry of a default judgment. Using such an affidavit falsely contending personal knowledge states a claim for violations of the FDCPA. *Sykes I* at 424.

Evidence of this robo-signing is already in the pleadings for class certification. *Sykes III* at 282-83 ("The record before the Court establishes that defendants obtained tens of thousands of default judgments in consumer debt actions, based on thousands of affidavits attesting to the merits of the action that were generated *en masse* by sophisticated computer programs and signed by a law firm employee [Fabacher] who did not read the vast majority of them and claimed to, but apparently did not, have personal knowledge of the facts to which he was attesting.")  Ms. Bueno needs to prove the same robo-signing practice by Fabacher in order to prevail on this claim against LRC.  The only other way for Plaintiff to acquire information about Fabacher's robo-signing activity would be for Plaintiff to subpoena non-party Fabacher for deposition to establish the facts for which there is already evidentiary support in the *Sykes* record.

Similarly, in order to prevail on her FDCPA claim against Samserv, Plaintiff must prove that Samserv is a "debt collector" within the meaning of the FDCPA because it regularly engages in sewer-service in order to collect consumer debts. Samserv denies it is a debt collector and invokes an exemption to the FDCPA definition of debt collector for process servers while serving process.  15 U.S.C. § 1692a(d)(D). However, the exemption does not apply if Plaintiff can prove by a preponderance of the evidence that Samserv does not actually serve process but rather files false affidavits of service. *Sykes I* at 423. The evidence attached to the class certification pleadings provided a record to document repeated sewer service. "The record also shows that on hundreds of occasions the defendant process servers purported to serve process at two or more locations at the same time." *Sykes III* at 282-83. The alternative is for Plaintiff to independently establish through discovery in this case the systematic use of false affidavits. (Plaintiff has propounded such discovery in this case, and Samserv is refusing to answer it, which will require forthcoming motion practice).

Pattern and practice evidence is a factor in obtaining statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B). Pattern and practice evidence and the degree the misconduct is intentional are also relevant for determining the amount of treble damages (up to $1,000) to

---

[2] LRC argues that the motion should be quashed because, if granted, it would generate additional attorney's fees for Plaintiff which LRC would incur. Plaintiff is not aware of—and LRC does not provide—any support for its contention that this is a relevant factor in this discovery dispute. If LRC is concerned that Plaintiff will rack up attorney's fees parsing through irrelevant documents, it is free to advance that argument in its opposition to any potential fee application Plaintiff may make.  I suspect the time spent fighting defendant's attempts to obtain the 34 documents ECBA has already provided to opposing counsels will far outstrip the time spent reviewing the 34 documents. Discovery is not expensive; fighting over discovery is expensive.

award under GBL 349, as well as for punitive damages under the statute. *Barkley v. Olympia Mortg. Co.*, 557 F. App'x 22, 26 fn. 1 (2d Cir. 2014), *as amended* (Jan. 30, 2014) ("However, punitive damages may be awarded for a violation of GBL § 349, *Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 167, 893 N.Y.S.2d 208 (2010)").  Further, if Ms. Bueno is able to prove a pattern and practice of misrepresentations, then that would establish the "consumer oriented" element of his GBL 349 claim. *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-CV-2741 JSR, 2015 WL 6437493, at *2-3 (S.D.N.Y. Oct. 21, 2015)(Consumer states a GBL 349 claim by asserting debt collector has repeatedly filed collection lawsuits demanding attorney's fees in the wherefore clause when fees were not allowed by law or contract.)

Plaintiff alleges that Ms. Bueno was the victim of a scheme to collect consumer debts by obtaining default judgments using false affidavits of service and false affidavits of merit signed by Todd Fabacher. In its defense LRC claims that any violation of the FDCPA was caused by a bona fide error and that "at all times, the Answering Defendant acted diligently and reasonably and had a good faith belief that it was acting properly and in compliance with all applicable laws and regulations." DE 33, Answer of LRC at ¶ 97. The requested information bears directly upon the issue of whether LRC indeed conducts its business so as to avoid FDCPA liability. By asserting a bona fide error defense, LRC opened the door to pattern and practice discovery. The cheapest and most effective means for Plaintiff to obtain this discovery is through the *Sykes* documents.

Defendants argue that the subpoena should be quashed because the requested documents are confidential pursuant to the Sykes Protective Order. Defendants correctly point out that "those confidentiality designations were asserted and accepted long ago" by the parties in *Sykes*. Plaintiff was not a party to *Sykes* and is not bound by the confidentiality order issued in that case.

Defendants cite no authority for their conclusion that the requested documents are undiscoverable simply because they were produced pursuant to a protective order in another action. The fact that the protective order in *Sykes* provides no exception for production pursuant to a subpoena is of no moment. Any confidential documents produced in response to the subpoena can be designated as such pursuant to the protective order in this case. *See* DE 35, Stipulated Confidentiality Agreement and Protective Order; s*ee* **Exhibit D**, Defendant LRC's motion to compel in *Guzman* (arguing that Plaintiff's privacy objection to LRC's request for Plaintiff Guzman's tax returns is baseless because any privacy concerns can be alleviated by designating the documents as confidential pursuant to the protective order in that case. The protective order in *Guzman* is identical to the proposed protective order in this case).

## *CONCLUSION*

The requests contained in the subpoena were reasonably limited in scope. Indeed, Plaintiff drafted the subpoena with the specific purpose of curing the defects that Judge Ellis identified in *Guzman*. Defendants have failed to demonstrate that the motion should be quashed on privacy grounds, and Defendants lack standing to challenge the subpoena on any other basis. Accordingly, Defendants' application should be denied.


Respectfully submitted,

/s/

4

Ahmad Keshavarz

cc: Opposing counsel via ECF